# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 28, 2012 Session

## TIMOTHY SCOTT MARCUM, ET AL. v. HASKEL "HACK" AYERS, ET AL.

### Appeal from the Circuit Court for Campbell County
#### No. 14746      John D. McAfee, Judge

### No. E2012-00721-COA-R3-CV-FILED-OCTOBER 15, 2012

Timothy Scott Marcum and Audrey L. Marcum ("Plaintiffs") purchased real property containing a house originally constructed by Haskel "Hack" Ayers and Tomi Ayers ("Defendants"). After the purchase, Plaintiffs discovered problems with the house. Plaintiffs and Defendants entered into a settlement agreement. Subsequently, Plaintiffs discovered additional problems with the house. Plaintiffs sued Defendants. Defendants filed a motion for summary judgment. After a hearing, the Trial Court granted Defendants summary judgment after finding that the settlement agreement constituted an unambiguous release of all claims past, present, and future. Plaintiffs appeal to this Court. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Stephen A. Marcum, Huntsville, Tennessee, for the appellants, Timothy Scott Marcum and Audrey L. Marcum.

Dudley W. Taylor, Knoxville, Tennessee, for the appellees, Haskel "Hack" Ayers and Tomi Ayers.

## OPINION

## Background

In August of 2005 Plaintiffs and Defendants entered into a Contract For Sale of Real Estate ("the Contract") for Plaintiffs to purchase a house and approximately 15 acres of real property known as Mountain Ayers from Defendants. The Contract provided, in pertinent part:

> No representations or warranties about the condition of the property has been made unless stated herein. It is agreed that the purchaser is buying the property on an "as-is" basis. It is the sole responsibility of the buyer to inspect the above property prior to closing or possession, whichever comes first and the buyer agrees that he has not relied upon any representation made by Ayers Real Estate or its agent in describing the property.

In connection with the sale of the property, Defendants provided a Tennessee Residential Property Condition Disclosure ("the Disclosure"). In the Disclosure, in response to the question of whether the seller was aware of any landfill on the property, Defendants checked the space for 'no.'

After purchasing Mountain Ayers, Plaintiffs began to experience problems with the house including problems with doors in the sun room. Plaintiffs contacted Defendants about these problems. In June of 2006, Plaintiffs and defendant Hack Ayers executed a settlement letter ("the Settlement Letter") which provided:

> From: Hack Ayers
> To:   Scott and Audrey Marcum
>
> Re:   Home known as Mountain Ayer
>       Mountain Ayer Lane, Jacksboro, TN 37757
>
> The fifty-two hundred dollars ($5200) [sic] is accepted, in full, for damages to Mountain Ayers. This will be the final settlement paid on this property.

Some time after executing the Settlement Letter, Plaintiffs experienced further problems with the house and discovered, according to Plaintiffs, that it had been constructed on fill dirt, which they alleged was not "adequately compacted or prepared." Plaintiffs sued Defendants.

Defendants filed a motion for summary judgment. After a hearing, the Trial Court entered its order on November 29, 2011 granting Defendants summary judgment after finding that the Settlement Letter was not ambiguous and "constituted a full and complete release of any and all claims growing out of the sale of Defendants' residence to Plaintiffs, whether past, present or future …." Plaintiffs appeal to this Court.

## **Discussion**

Although not stated exactly as such, Plaintiffs raise one issue on appeal: whether the Trial Court erred in granting summary judgment to Defendants after finding that the Settlement Letter constituted an unambiguous release of all claims.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd*

*v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

"Issues relating to the interpretation of written instruments involve legal rather than factual issues. These essentially legal questions can be resolved using summary judgment when relevant facts are not in dispute." *The Pointe, LLC v. Lake Management Association, Inc.*, 50 S.W.3d 471, 474 (Tenn. Ct. App. 2000) (citations omitted).

In the case now before us, the Settlement Letter constituted a release. "Because the release is a contract, rules of construction for interpreting a contract are used in construing a release." *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989). As this Court stated in *Kafozi v. Windward*:

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to

-4-

give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id*. A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id*. Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

The Trial Court found the Settlement Letter to be unambiguous. We agree. The Settlement Letter provides: "The fifty-two hundred dollars ($5200) [sic] is accepted, in full, for damages to Mountain Ayers. This will be the final settlement paid on this property." The plain, clear, and unambiguous terms of the Settlement Letter provide that the $5,200 was accepted as the final settlement paid for damages related to Mountain Ayers.

In their brief on appeal Plaintiffs assert that the Settlement Letter is ambiguous, in part, because the terms 'home,' 'damages,' and 'this property' are not defined within the document, and because the document does not include the words 'all' or 'release.' To begin, we note that the terms 'home,' 'damages,' and 'this property' may not *fairly* be understood here in more than one way. No evidence was produced that any other parcel of real property containing a house is known as Mountain Ayers. Furthermore, the address of Mountain Ayers is provided in the Settlement Letter. As such, the term 'home' when paired with the further information in the Settlement Letter clearly refers to the real property containing a house sold by Defendants to Plaintiffs. Likewise, the term 'this property' is sufficiently defined within the Settlement Letter to refer to the real property, including the house, sold to Plaintiffs by Defendants. Although Plaintiffs assert that the term 'this property' could mean "patio doors," "water damaged floor," "the structure plus the real property," or "something else," 'this property' is not restricted in any manner within the Settlement Letter and clearly refers to Mountain Ayers.

Plaintiffs assert in their brief on appeal that the term 'damages' could refer to specific damages, damages to the structure, damages to the land, or "something else." This argument is simply disingenuous. The term 'damages' is not restricted to specific damages,

nor is it restricted in any other manner. Damages means damages. It can not *fairly* be understood here to be "something else."

As for the fact that the Settlement Letter does not contain the terms 'all' or 'release,' this argument is without merit. A release need not contain these specific words in order to constitute a valid release. The Settlement Letter identifies the parties to the release, identifies the subject matter of the release, i.e., the real property, including the house, sold to Plaintiffs by Defendants, and provides that the $5,200 is accepted "in full" and is "the final settlement" for damages. The Settlement Letter clearly and unambiguously is a release even though it does not contain the term 'release,' and it clearly and unambiguously defines the scope of the release even though it does not contain the term 'all.'

Plaintiffs cite to *Richland Country Club, Inc. v. CRC Equities, Inc.,* 832 S.W.2d 554 (Tenn. Ct. App. 1991), and *Cross v. Earls*, 517 S.W.2d 751 (Tenn. 1974), in support of their argument that the Settlement Letter is ambiguous because it allegedly does not define the intended scope of the release. As discussed above, however, the Settlement Letter does define the scope of the release. The Settlement Letter by its clear and unambiguous terms is a release for damages to Mountain Ayers and constitutes the final settlement. The Settlement Letter clearly and unambiguously sets forth the intent of the parties with regard to the scope of the release.

In their brief on appeal Plaintiffs continue to assert that the Settlement Letter is ambiguous and that other evidence tendered by the parties is in conflict and creates a question of fact. We, however, agree with the Trial Court that the language of the Settlement Letter is not ambiguous. Because the Settlement Letter is unambiguous, there was no need for the Trial Court, and no need for this Court, to consider other extraneous evidence. The literal meaning of the unambiguous language of this contract must control the outcome. The Trial Court correctly held that consideration of evidence outside of the unambiguous language of the Settlement Letter was unnecessary and would have been improper.

It is not the role of the courts to rewrite contracts for dissatisfied parties. "[I]t is an often-cited principle in this jurisdiction that '[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them.'" *Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007) (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)).

Plaintiffs also assert in their brief on appeal that Defendants were guilty of fraud or misrepresentation and that because of this the Trial Court should not have relied upon the Settlement Letter. Plaintiffs allege that Defendants committed fraud because

Defendants allegedly were aware of the landfill when they sold Mountain Ayers to Plaintiffs. Unfortunately for Plaintiffs, even if it were determined that Defendants had committed fraud in this manner, such fraud was not committed in connection with inducing Plaintiffs to enter into the Settlement Letter. Rather, such alleged fraud, and we make no assertion with regard to whether these acts did or did not constitute fraud, would have been committed in connection with Defendants' sale of Mountain Ayers to Plaintiffs, which occurred well before the parties entered into the Settlement Letter. Plaintiffs have shown no fraud which would invalidate the contractual nature of the Settlement Letter.

The clear and unambiguous terms of the Settlement Letter release Defendants from the claims made in this lawsuit. There are no genuine disputed issues of material fact and Defendants are entitled to judgment as a matter of law. As such, the Trial Court correctly granted Defendants summary judgment. We affirm the Trial Court's November 29, 2011 order.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Timothy Scott Marcum and Audrey L. Marcum, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

-7-