IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2018 Session

## MARY L MILLER v. BRENDA S MAPLES, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 12-0677  Jeffrey M. Atherton, Chancellor**

———————————————————

**No. E2016-00511-COA-R3-CV**

———————————————————

Following settlor's death, settlor's daughters, the beneficiaries of the settlor's trust, engaged in mediation, which resulted in a settlement agreement concerning the distribution of the trust's assets. Before the settlement was approved by the trial court under the Tennessee Uniform Trust Act ("TUTA"), one of the daughters died, and her estate was substituted in the lawsuit. The surviving siblings then joined in an amended complaint seeking a determination concerning whether the terms of the settlement agreement violated a material purpose of the trust so as to be unenforceable under the TUTA. The deceased daughter's estate argued for enforcement of the settlement agreement such that the estate would receive the deceased daughter's share of the trust. The trial court granted summary judgment in favor of the estate, holding that the settlement was enforceable under the TUTA. The trial court awarded attorney's fees and costs to the estate under the terms of the settlement. We affirm the trial court's enforcement of the settlement but reverse its award of attorney's fees and costs to the estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellant, Jamie K. Parris.

Lawrence F. Giordano, Janet S. Hayes, and Jared S. Garceau, Knoxville, Tennessee, for the appellees, Mary L Miller, Estate of Brenda S Maples, Marcus Hindmon, and Matthew Hindmon.

## OPINION

## I. Background

Joy Parris ("Mother") executed the "Joy M. Parris Trust as Amended and Restated on November 8, 2004" (the "Trust"). The Trust's assets consist of real property in Overton County, Tennessee (valued at $248,500.00); real property in Pickett County, Tennessee (valued at $78,700.00), and brokerage accounts, which are held in Hamilton County, Tennessee (valued at $889,122.62). Mother and her husband, who died prior to the events giving rise to the instant appeal, had three children: Appellant Jamie K. Parris, Mary L. Miller, and Brenda S. Maples. It is undisputed that the Trust provided that the three children would become the sole co-trustees of the Trust on Mother's death.

Mother died on December 4, 2011, and the three daughters became co-trustees of the Trust. Thereafter, disagreements arose among the siblings concerning the disposition of the Trust's assets. In an effort to resolve these disagreements, on August 29, 2012, Ms. Miller, in her capacity as co-trustee, initiated a declaratory judgment action in the Hamilton County Chancery Court ("trial court") seeking guidance as to the "rights and obligations of the parties pursuant to the provisions of the . . . Trust." On September 6, 2012, Ms. Parris filed a motion to dismiss or transfer the case on the ground that Hamilton County was not the proper venue for the action. Specifically, Ms. Parris averred that none of the co-trustees resided in Hamilton County, and the real property held in Trust was not located in Hamilton County. Ms. Parris argued that Overton County was the proper venue. On October 23, 2012, Ms. Miller filed a response in opposition to Ms. Parris' motion to dismiss. The motion was set for hearing on October 29, 2012. Following the hearing, the trial court entered an order, on November 2, 2012, ordering the parties to attend mediation.

The siblings attended mediation as ordered by the trial court. On or about December 6, 2012, they executed a "Settlement and Mutual General Release" (the "Settlement"). Therein, the sisters agreed to early distribution of the Trust assets, divided the Trust equally such that each would receive an immediate distribution of approximately $420,096.00, and agreed that the Settlement would terminate the Trust.

On October 16, 2013, nearly a year after the Settlement was executed, Ms. Maples died as a result of injuries she sustained in a car accident. At the time of Ms. Maples' death, no Trust assets had been distributed. Ms. Maples died testate, and her will was admitted to probate in Mississippi. Ms. Maples' will devised her estate to her step-daughter, Sandra Cooper. At the time of her death, Ms. Maples was divorced from Ms. Cooper's father, Ray Maples.

On October 16, 2014, one year after Ms. Maples' death, Ms. Parris and Ms. Miller filed several joint motions: (1) a motion to amend the complaint for declaratory judgment

asking the trial court to determine whether the Settlement was enforceable under the TUTA, and arguing that it was not enforceable because it violated material purposes of the Trust; (2) a motion seeking to substitute the estate of Brenda S. Maples' estate (the "Estate," or "Appellee") as the real party in interest; and (3) a motion to approve disbursement of the Trust's assets to Ms. Parris and Ms. Miller only. The trial court granted the motion to amend the complaint. The amended complaint states, in relevant part:

13. On or about December 12, 2010, Mrs. Joy Parris [i.e., Mother] prepared a holographic codicil to the testamentary provisions of her trust, entirely in her handwriting, signed by her, that specifically stated her intentions regarding the disposition of her estate . . . . Specifically, Mrs. Parris stated, "I do not want Sandra [Cooper] or Ray [Maples] to have anything . . . I do not want Ray [Maples] or Sandra [Cooper] to have anything . . . . As far as I am concerned they have been a thorn in my flesh."

***

17. The purported [Settlement] is not enforceable under TCA Section 35-15-111 that prohibits settlement agreements that attempt to terminate a trust in an impermissible manner because it violates the intention of the Settler [i.e., Mother] in establishing a periodic release of funds rather than immediate release of funds, and otherwise.

18. Additionally, the death of Ms. Maples means that implementation of the purported [Settlement] would violate the express terms of the [Trust], limiting division of the trust corpus into shares for the children "then living". Because the Trust was not divided before Ms. Maples' death, she is not now living and is therefore not entitled to a share of the Trust.

19. The purported [Settlement] is not enforceable under TCA Section 35-15-111 that prohibits settlement agreements that attempt to terminate a trust in an impermissible manner because it attempts to terminate the trust by distributing funds to persons who are not the Settlor's issue, and therefore violates the intention of the Settlor that the trust funds will go only to Settler's children or surviving issue, and otherwise.

The trial court also allowed the Estate to be substituted as a party. On November 20, 2014, the Estate filed a "Notice and Motion to Enforce Settlement," wherein it argued that:

8. Following execution of the Settlement Agreement, counsel for the parties did not timely inform this Court of the successful mediation, nor did they timely effect the agreed upon dismissal of this lawsuit, nor did they timely effect the agreed upon transfer of assets . . . .

\*\*\*

11. There is no reasonable explanation for the failure of the Parties' attorneys to timely inform the Court of the existence of the Settlement Agreement, nor is there a cognizable reason that the Settlement Agreement has never been effected, nor is there any cognizable reason that the Settlement Agreement should not be enforced forthwith. . . .

The Estate asked the trial court to find the Settlement enforceable under the TUTA and to award the Estate its attorney's fees under the plain terms of the Settlement due to Ms. Parris and Ms. Miller's alleged breach of the Settlement, discussed *infra*. Ms. Parris and Ms. Miller maintained their position that the Settlement was unenforceable under the TUTA. Trial was set for February 26, 2015.

On February 4, 2015, Ms. Parris filed a motion for continuance, which motion was opposed by the Estate. The Estate also filed a motion to realign parties on February 12, 2015. The motion to realign parties was premised on the grounds that after Ms. Maples' death, Ms. Parris and Ms. Miller joined together to oppose the Estate's continued involvement in the lawsuit and any disbursement of the Trust's assets to the Estate. Ms. Parris opposed both motions on February 26, 2015.

On February 25, 2015, Ms. Miller and Ms. Parris jointly filed a second motion to amend the complaint. On March 5, 2015, the trial court denied the Estate's motion to realign the parties and granted Ms. Parris' motion for continuance.

On May 4, 2015, Ms. Parris filed a "Motion to Dismiss the Action for Failure to Join Indispensable Parties," wherein she asserted that:

1. Both T.C.A. Section 35-15-411 and Section 35-15-111 require the joinder of "the qualified beneficiaries."
2. T.C.A. Section 35-15-103(24)(A) defines as [sic] "Qualified beneficiary" as a beneficiary who "on the date the beneficiary's qualification is determined: (A) is a distribute or **permissible distribute** of trust income or principal."
3. The phrase "permissible distribute" means those who may receive a distribution in the future under the trust and are readily identifiable.
4. Thus the phrase "qualified beneficiaries" necessarily includes the "issue" of all Beneficiaries.

- 4 -

5.  Co-Trustee Mary Miller has the following issue of the following ages: Marcus L[.] Hindmon, age 38, who has 2 children . . .; and Matthew L[.] Hindmon, age 36, who has 3 children . . .

6.  The purported Agreement failed to join all qualified beneficiaries and therefore is not valid under Tennessee law.

The Estate opposed the motion to dismiss.  On May 7, 2015, the Estate filed a motion to strike the second amended complaint.  On May 21, 2015, the trial court heard arguments on Ms. Parris' motion to dismiss for failure to join indispensable parties, and Ms. Parris and Ms. Miller's joint second motion to amend the complaint.  Following the hearing, the trial court entered a memorandum opinion and order on May 28, 2015.  Therein, the trial court first noted that

> [t]he postures of the motion to dismiss for failure to join indispensable parties and the second motion to amend complaint are notable.  Parris' motion to dismiss was directed at Miller, but it was unopposed by Miller. Instead, a co-defendant, the Maples Estate, opposed the motion.  Similarly, Miller and Parris' second motion to amend complaint was jointly brought by parties on opposite sides of this action, but the motion was again opposed by Parris' co-defendant, the Maples Estate.  Here, we effectively have a plaintiff and one defendant working in unison to defeat another defendant's interests in this action.

The trial court went on to grant the second motion to amend the complaint and denied the motion to dismiss for failure to join indispensable parties.  Although the trial court declined to dismiss the lawsuit for failure to join the Hindmon brothers, the court ordered that the amended complaint would: (1) name the Hindmon brothers as defendants in the lawsuit; and (2) include "assertions regarding [the Hindmon brothers'] interests in the [Trust] and consent to the Settlement Agreement, requiring them to identify such interests and to specify whether they consent to the Settlement Agreement . . . or whether they wish to oppose the Settlement Agreement (and their reasons for doing so)."  On June 15, 2015, Ms. Miller filed the third Amended Complaint for Declaratory Judgment Regarding the Construction and Interpretation of Trust and Purported Settlement Agreement.  The third amended complaint named the Estate, Ms. Parris, and the Hindmon brothers as defendants.  Substantively, the third amended complaint reiterated the arguments averred in the original complaint and sought a ruling that the Settlement was unenforceable under the TUTA because it "attempt[s] to terminate the trust in an impermissible manner because it violates the intention of the Settlor in establishing a periodic release of funds rather than an immediate release of funds . . . ."  In a July 1, 2015 motion to enter judgment and in its July 13, 2015 answer, the Estate argued that the Settlement was valid and enforceable and sought a judgment to that effect.  In its answer, the Estate further argued that Ms. Miller's assertion that the Settlement was unenforceable at the time it was executed was barred by laches because Ms. Miller

"failed to timely raise this issue with the Court until October 16, 2014, more than a year after Ms. Maples' death and nearly two years after the execution of the Settlement. . . ."

On August 14, 2015, the Hindmon brothers filed a joint answer, wherein they argued, in relevant part, that the Settlement was unenforceable because it immediately distributed the Trust assets in contravention of the Trust provision that allegedly dictated that Trust assets would be distributed over a period of approximately ten years, *see* further discussion *infra*.

On September 28, 2015, the Estate filed a motion for summary judgment, seeking enforcement of the Settlement under the TUTA and an award of attorney's fees under the Settlement for Ms. Parris and Ms. Miller's alleged breach of same. On November 23, 2015, Ms. Miller and Ms. Parris filed a joint response in opposition to the Estate's motion for summary judgment. On November 30, 2015, the trial court held a hearing on the motion for summary judgment. By order of February 8, 2016, the trial court granted the Estate's motion for summary judgment. In granting the motion, the trial court held that "the Settlement Agreement shall be and is hereby enforced as written. The Trust is modified or terminated to the extent necessary to permit enforcement of the Settlement Agreement." On March 8, 2015, Ms. Parris filed a notice of appeal "from the Final Order entered on or about February 8, 2016."

On March 4, 2016, the Estate filed a motion for attorney's fees pursuant to the Settlement's provision for same. On March 24, 2016, Ms. Parris filed a response in opposition to the Estate's motion for attorney's fees. By order of April 6, 2016, the trial court referred the question of attorney's fees to a special master and charged the special master to first determine whether the Estate was entitled to attorney's fees under the Settlement. On November 18 2016, the special master filed a report, in which it opined that the Estate was entitled to reasonable attorney's fees under the plain language of the Settlement. Over Ms. Parris and Ms. Miller's objection, by order of December 19, 2016, the trial court confirmed the special master's report and ordered the matter to be submitted to the special master again for determination of the amount of the attorney's fees and costs. By order of January 25, 2018, the trial court affirmed the special master's recommendation and awarded the Estate attorney's fees of $96,573.50 and expenses of $6,507.09

## II. Issues

Appellant raises thirteen issues in her brief; however, it appears that there are three dispositive issues, which we state as follows

1. Whether Hamilton County was the proper venue and/or whether Ms. Parris waived any objection to venue.

- 6 -

2.  Whether the trial court erred in granting summary judgment in favor of the Estate, thereby enforcing the Settlement Agreement under the TUTA.

3.  Whether the trial court erred in awarding attorney's fees and costs to the Estate.

In the posture of Appellee, the Estate asks this Court to award its attorney's fees and costs expended in defense of this appeal.

### III. Venue

Ms. Parris first objected to venue on September 6, 2012, when she filed a motion to dismiss or transfer the case on the ground that Hamilton County was not the proper venue. Ms. Parris specifically argued that none of the co-trustees reside in Hamilton County, Mother was a resident of Bradley County, and the real property assets of the Trust are not located in Hamilton County. Ms. Parris sought transfer of the case to Overton County (the county in which Ms. Parris resides). On appeal, Ms. Parris reiterates her previous venue arguments and asserts that the trial court's grant of summary judgment should be reversed because Hamilton County was not the proper venue for the case. "An original question of venue is a question of law and not one of fact." *Resource Co., Inc. v. Briston Memorial Hosp.*, No. 01-A-01-9412-CH-0056, 1995 WL 422468, *2 (Tenn. Ct. App. July 19, 1995). As such, we review this issue *de novo*.

As this Court has noted, "[v]enue is the personal privilege of a defendant to be sued in particular counties; it may be waived and is waived by a defendant who defends upon the merits without first interposing an objection to improper venue." *Ferguson v. Ferguson*, No. M2001-01836-COA-R3-CV, 2002 WL 31443205 (Tenn. Ct. App. Nov.1, 2002) (citing *Corby v. Matthews*, 541 S.W.2d 789 (Tenn.1976)). In *Corby*, the Tennessee Supreme Court specified that "[a] plaintiff, by filing suit, waives any right to dispute venue." *Corby*, 541 S.W.2d at 791. As noted by the trial court, the procedural posture of this case is rather odd. Although Ms. Miller initially filed for declaratory judgment against her siblings, after Ms. Maples' death, Ms. Miller and Ms. Parris joined in an amended complaint seeking to have the court declare the Settlement unenforceable under the TUTA. The amended complaint was filed in the Hamilton County Chancery Court and, at paragraph 5, specifically states that "[t]he acts or omissions giving rise to this lawsuit occurred in Hamilton County, Tennessee." Having sought affirmative relief in the Hamilton County Chancery Court, Ms. Parris waived any objection to venue in that county.

However, even if we assume, *arguendo*, that Ms. Parris did not waive the venue question, we nonetheless conclude that Hamilton County is the proper venue under Tennessee Code Annotated section 35-15-204. Tennessee Code Annotated section 35-

15-204 provides, in relevant part, that "venue for a judicial proceeding involving a trust is in the county of this state in which the trust's principal place of administration is or will be located . . . ." Here, the bulk of the Trust's assets consist of brokerage accounts with a total value of approximately $889,122.00. These accounts are undisputedly located in Hamilton County, where they have been managed for some thirty years by Davis Financial Advisors. By comparison, the real property located in Overton County, where Ms. Parris seeks venue, is valued at approximately $248,500.00. Furthermore, the Trust document itself states, in pertinent part, that "On December 19, 1996, I, Joy M. Parris, **of Hamilton County, Tennessee**. . ." (emphasis added). It is undisputed that Mother lived in Hamilton County until two years prior to her death when she moved to an assisted living facility in Bradley County. From the plain language of the Trust document, it is clear that at the time she executed the Trust, Mother was a resident of Hamilton County. For these reasons, we conclude that Hamilton County is the proper venue for adjudication of any dispute arising from the Trust.

## IV. Enforcement of the Settlement

The question of enforcement of the Settlement was decided on grant of summary judgment in favor of the Estate. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare-Memphis Hosp.,* 325 S.W.3d 98, 103 (Tenn. 2010); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013); *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Id.* (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013); *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)). For actions initiated on or after July 1, 2011, the standard of review for summary judgment is governed by Tennessee Code Annotated Section 20-16-101. The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

To the extent that adjudication of this appeal requires us to interpret provisions of the Trust and the Settlement, we apply the standard of review applicable to contract interpretation. "A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Edmonson v. Wilson*, No. E2010-02215-COA-R3-CV, 2011 WL 6147014 (Tenn. Ct. App. Dec. 9, 2011), *perm. app. dismissed* (Tenn. March 27, 2012). Because the interpretation of a written agreement is a matter of law, *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006), we undertake to interpret the language of the contract *de novo*. "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Id.* (citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). "In interpreting contractual language, courts look to the plain meaning of the words in the documents to ascertain the parties' intent." *Id.* (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)).

We further note that settlement agreements that are entered into by and between family members are given particular weight under Tennessee law. As this Court has stated, "[r]eaching family compromises has always been looked upon with favor by the courts." *Wood v. Lowrey*, 236 S.W.3d 747, 757 (Tenn. Ct. App. 2007); *Williams v. Jones*, 388 S.W.2d 665, 672 (Tenn. Ct. App. 1963) (citing 11 Am. Jur. 259, Compromise and Settlement) ("'In cases relating to the adjustment of family disputes where the motive is to preserve the honor or peace of the family or the family property, the courts will not closely scrutinize the consideration or look into the merits of the dispute where all is fair and aboveboard. The courts will decree performance of all reasonable settlements if possible, even though they may, at times, rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers, subject, however, to a proper regard for the principles that govern the courts in the specific enforcement of compromise agreements where this form of remedy is sought.'").

To the extent our review requires interpretation of the provisions of the TUTA, Tenn. Code Ann. § 35-15-101, *et seq.*, we are guided by the familiar principles of statutory construction. The primary objective of statutory construction is to determine the intent of the legislature and give effect to that intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). To achieve this objective, we begin by examining the plain language of the statute in question. *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005). This Court presumes that the legislature intended every word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). Therefore, if the "language is not ambiguous ... the plain and ordinary meaning of the statute must be given effect*." In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007).

Ms. Parris argues that the Settlement is not enforceable because it: (1) frustrates material purposes of the Trust; and (2) was executed in violation of the applicable statutory procedure. We will address each of these arguments in turn.

## A. Frustration of Trust Purposes

Tennessee Code Annotated section 35-15-411(b) provides that:

> Following the settlor's death, a noncharitable irrevocable trust may be terminated upon consent of all of the qualified beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust. A noncharitable irrevocable trust may be modified upon consent of all of the qualified beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust.

However, a lack of consent among the qualified beneficiaries of the trust is not fatal to modification or termination of the trust, to-wit:

> (d) If not all of the qualified beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification or termination may be approved by the court if the court is satisfied that:
> (1) If all of the qualified beneficiaries had consented, the trust could have been modified or terminated under this section; and
> (2) The interests of a qualified beneficiary who does not consent will be adequately protected.

Tenn. Code Ann. § 35-15-411(d).

In its order granting summary judgment, the trial court held that "[i]f all of the qualified beneficiaries had consented, the Trust could have been modified or terminated under [] Tenn. Code Ann.§ 35-15-411(b) because continuation of the Trust is not necessary to achieve any material purpose of the Trust." On appeal, Ms. Parris argues that the trial court's enforcement of the Settlement and approval of termination of the Trust under the TUTA was improper because enforcement of the Settlement violates material purposes of Trust by: (1) immediately distributing the Trust corpus; (2) distributing the Trust corpus to persons who are not Mother's issue; and (3) dividing the Trust corpus into shares for children who are not "then living." We address each of these arguments in turn.

## 1. Immediate distribution of trust corpus

The Settlement provides, in part, that, "The parties agree to an early distribution relative to the trust corpus . . . and hereby agree to the termination thereafter." To this end, Ms. Parris, Ms. Miller, and Ms. Maples agreed, in the Settlement, to a specific and immediate distribution of the Trust assets, with each receiving approximately one-third of the total assets of the Trust.

At article 3, section II, paragraph D, the Trust states:

1. During the lifetime of the child,

(a) the Trustee may distribute all or any portion of the net income and principal of the trust to any one or more of the group consisting of the child and the child's issue in such amounts and at such times as the Trustee, in the Trustee's discretion, may determine to be necessary for the support, maintenance, health and education of the child and the child's issue.
(b) In addition, within one year after the date of my death (hereinafter called "the beginning date"), the Trustee shall distribute all or such portion of the principal of the trust to the child . . .but the aggregate amount of all such appointments . . . shall not exceed ten percent (10%) of the "principal limitation amount" before the end of the first year after the beginning date; twenty percent (20%) of the "principal limitation amount" before the end of the second year after the beginning date; thirty percent . . . before the end of the third year [and so at a rate of 10% per year for 10 years].

It is undisputed that, on Mother's death, Ms. Parris, Ms. Miller, and Ms. Maples became co-trustees of the Trust. In arguing that the Settlement is unenforceable under the TUTA, Ms. Parris contends that the Settlement provision allowing distribution of the Trust assets immediately to the co-trustees violates the Trust by usurping the provision, *supra*, allegedly mandating a periodic distribution of the Trust assets at a rate of 10% per year for 10 years. In its order enforcing the Settlement, the trial court held that

The ten-year disbursement provision of the Trust is not a material purpose of the Trust because the three daughters, as the sole co-trustees of the Trust, had the discretion to distribute all of the Trust's assets. The three daughters exercised this discretion by executing the Settlement Agreement.

We agree. Reading the periodic distribution provision in context, Ms. Parris' interpretation that the periodic distribution is a primary purpose of the Trust overlooks the provision immediately preceding it. As set out above, the plain language of the Trust gives the trustee (here, the co-trustees) discretion to "distribute all or any portion of the net income and principal of the trust . . . ." In view of the broad discretion for

distribution of the Trust assets under this provision, we can only interpret the periodic distribution provision as an acceptable alternative to full distribution. In any event, we agree with the trial court that the provision for periodic distribution cannot be read as a material purpose of the Trust when the provision immediately preceding it allows for full distribution at any time.

## 2. Distribution to persons who are not Mother's issue

Ms. Parris next contends that the Settlement violates the Trust's purported material purpose limiting distribution of the Trust's assets to Mother's issue. Specifically, Ms. Parris argues that enforcement of the Settlement results in disbursement to the Estate (and, specifically, to Ms. Cooper). In its order granting the Estate's motion for summary judgment, the trial court addressed this argument, in relevant part, as follows:

> Ms. Miller and Ms. Parris' argument that enforcement of the Settlement Agreement would violate Joy M. Parris' alleged intent to prevent any disbursement of Trust assets to anyone outside of the family is without merit. Joy M. Parris expressed that the primary purpose behind the Trust was to "ensure that all of the property to be distributed upon [her] death from this trust . . . shall be divided equally among our children. . . ." By executing the Settlement Agreement, the three daughters carried out the primary purpose of the Trust by agreeing to distribute the Trust's assets equally among themselves. When the Settlement Agreement was executed, Brenda Maples received an absolute right to the assets provided to her in the Settlement Agreement and what she chose to do with those assets was, thereafter, up to her. Joy M. Parris could not come forward from the grave and dictate what Ms. Maples did with the portion of the Trust assets that were left to her daughter.

Turning to the plain language of the Trust, we agree with the trial court's finding that the primary purpose of the Trust was to divide the assets equally among the three daughters. We further agree that the Trust does not exclude non-family members. In fact, at section II.D.2(a), the Trust states that,

> [u]pon the death of the child . . . [t]he then remaining principal and undistributed income of the trust shall be distributed to such appointees, including the child's estate, and in such manner and proportions, either outright or in trust, as the child may have appointed by his or her last will and testament making specific reference to this general testamentary power of appointment.

Although the plain language of the Trust supports the trial court's determination that distribution only to Mother's issue was a primary purpose of the Trust, Ms. Parris

contends that Mother executed a "holographic codicil" to her Trust, which manifested Mother's intent to specifically exclude Ms. Maples' step-daughter, Sandra Cooper, from receiving any of the Trust's assets. The purported codicil, dated December 12, 2010, is addressed to Ms. Miller and is in letter form. The parties do not dispute that the document is in Mother's handwriting. In relevant part, the document states that, "I do not want Sandra [Cooper] . . . to have anything . . . .  I do not want . . . Sandra to have anything."

The Trust specifies that, "I [i.e., Mother] reserve the right at any time to amend or revoke this trust instrument . . . by an instrument delivered to the Trustee. . . ."  Under the Trust, Mother was named and served as the original Trustee. Section 35-15-602 of the TUTA provides for the amendment of revocable trusts, in relevant part, as follows:

> (c) The settlor may revoke or amend a revocable trust:
> (1) By substantial compliance with a method provided in the terms of the trust; or
> (2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
> (A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or
> (B) Any other method manifesting clear and convincing evidence of the settlor's intent.

In Tennessee, a settlor's intent is the gravamen of whether the trust was modified or revoked. Tenn. Code Ann. § 35-6-102(12) ("'Terms of a trust' means the manifestation of the intent of a settlor or decedent with respect to the trust, expressed in a manner that admits of its proof in a judicial proceeding, whether by written or spoken words or by conduct."); *Marks v. Southern Trust Co.*, 310 S.W.2d 435, 438 (Tenn. 1958) (internal citations omitted) ("Of course the important thing in the construction of the trust instrument is to determine the intention of the settlor . . . ."). The problem with Ms. Parris' argument that the holographic document amended the Trust to specifically exclude Ms. Cooper from receiving any benefit therefrom is that the document does not reference the Trust at all. Rather, the document states, "Mary when you get time I want you to type up my will it is already [sic] except for the piano and desk which [Ms. Maples] wants Sandra. I do not want Sandra to have anything . . . ."  If we could construe the document as a holographic codicil, it would be a codicil to Mother's will, not her Trust. As the proponent of the modified Trust, Ms. Parris had the burden to show that Mother intended to modify the Trust either by compliance with the means of modification outlined in the Trust document, or by some other action showing a clear intent to change the original terms of the Trust document. For the foregoing reasons, the holographic document does not manifest "clear and convincing evidence" of Mother's intent to amend the Trust. Accordingly, Ms. Parris failed to meet her burden to show that

the Trust was modified by this document.

As noted above, Ms. Maples' will named Ms. Cooper as her sole beneficiary, and her will was admitted to probate in Mississippi. Ms. Parris contends that Ms. Maples' will is unenforceable insofar as it provides for distribution of any of the Trust assets to Ms. Cooper. Specifically, Ms. Parris cites the language, "as the child may have appointed by his or her last will and testament **making specific reference to this general testamentary power of appointment**," which is contained in Trust provision II.D.2(a), *supra*. (Emphasis added). Ms. Parris argues that Ms. Maples' will did not comply with the foregoing provision and, thus, is not enforceable.

In the first instance, the enforceability of Ms. Maples' will is not before us as jurisdiction of the will lies in the Mississippi probate court. That being said, Ms. Maples survived her Mother by almost two years. In other words, any right Ms. Maples had in the Trust assets was fully vested in Ms. Maples' at the time of her Mother's death. The plain language of Trust provision II.D.2 is triggered only "[u]pon the death of the child." Because Ms. Maples survived her Mother, the requirements set out in II.D.2 do not bear on Ms. Maples' right to her share of the Trust assets.

**3. Dividing Trust assets into shares for children who are not "then living"**

Ms. Parris further contends that the Settlement frustrates the purported purpose of the Trust requiring distribution only to Mother's children, who are "then living." Specifically, Ms. Parris cites article 3, section II(C) of the Trust, which states, in relevant part that, "The Trustee shall divide all of such trust property . . . into as many equal shares as may be necessary to allocate one (1) share to each child of mine who is **then living**." (Emphasis added). Ms. Parris contends that the "then living" criterion is to be applied on the date that the Trust's assets are physically distributed. The trial court disagreed and held that ". . . as a matter of law . . . 'then living' is to be gauged at the time of Joy M. Parris' death according to the terms of the Trust." The trial court went on to find that "[b]ecause each of the three daughters was 'then living' at the time of the death of Joy M. Parris, each daughter was entitled to an equal share of the trust's assets." We agree.

Concerning the timing of the distribution of Trust assets, at article 3, section 1, the Trust states, "[u]pon my [i.e., Mother's] death the Trustee shall allocate the trust property . . . as follows . . . [i]f a child of mine survives me, all of the trust property shall be disposed of in accordance with the provisions of the Section entitled 'Trusts for Children' found in this Article." The "Trusts for Children" provision of article 3, section II of the Trust directs the Trustee to "divide all of such trust property . . . into as many equal shares as may be necessary to allocate one (1) share to each child of mine who is then living." At article 7, section 1, the Trust states that, "For purposes of this trust instrument, a beneficiary shall be deemed to survive me only if he or she survives me by

- 14 -

at least ninety (90) days." It is undisputed that Ms. Maples survived Mother for more than ninety days. Reading the foregoing Trust provisions in harmony, we agree with the trial court's interpretation that the term "then living" refers to a child who survives Mother for at least ninety days. Accordingly, the fact that the trustee has not made distribution under the terms of the Trust is not dispositive of whether a right to a share in the Trust's assets vests in a surviving child ninety days after Mother's death. The Settlement does not frustrate this purpose. Ninety days after Mother died, Ms. Maples was vested in a one-third share of the Trust's assets. The Settlement merely clarifies the specific assets that will pass to Ms. Maples as her one-third share. All of this occurred before Ms. Maples died. As such, Ms. Maples' share under the Trust inures to the benefit of her Estate.

### B. Violation of Statutory Procedure under the TUTA

Having determined that the Settlement does not frustrate any material purpose of the Trust, we now turn to Ms. Parris argument that the parties did not follow the proper procedure for judicial approval of termination or modification of a trust under the TUTA. Specifically, Ms. Parris contends that in order to properly terminate or modify the Trust in favor of the Settlement, the parties were required to: (1) file an action seeking approval, termination, or modification of the Trust; (2) ask the trial court to approve the proposed modification or termination; and (3) bring all qualified beneficiaries of the Trust before the court. Ms. Parris contends that none of the foregoing requirements were met in this case.

### 1. Action seeking approval, termination, or modification of the Trust

As noted above, the Settlement specifically states that the parties thereto seek to terminate the Trust. The TUTA provides that "[a] proceeding to approve or disapprove a proposed modification or termination [of a trust] . . . may be commenced by a trustee or beneficiary." This was done in the instant case by Ms. Miller, a co-trustee. After the Settlement was executed, Ms. Miller filed a declaratory judgment asking the trial court to "declare the rights and obligations of the parties pursuant to the provisions of the [Trust], including the interpretation of . . . the purported settlement agreement." Ms. Miller attached the Settlement to her complaint. As discussed above, Ms. Miller sought a declaration that the Settlement, which sought termination of the Trust, violated the TUTA and, as such, should not be enforced. In short, Ms. Miller filed a suit to "disapprove a proposed . . . termination [of the Trust.]."

### 2. Ask for approval of the proposed modification or termination

Ms. Parris further contends that in order for the trial court to approve the termination or modification of a trust, the trustee must specifically request approval of termination or modification of the trust. Respectfully, the TUTA contains no such

requirement. Rather, as set out above, the trustee need only commence "[a] proceeding **to approve or disapprove** a proposed modification or termination under [§] 35-15-411 . . ." Tenn. Code Ann. § 35-15-410(b) (emphasis added). As discussed above, Ms. Miller commenced such a proceeding. Furthermore, after Ms. Maples' death, her Estate filed a motion to enforce the settlement under the TUTA, in which it specifically asked the trial court to recognize the Settlement as a valid agreement and to enforce its terms, including termination of the Trust in favor of the Settlement.

### 3. Qualified beneficiaries

Ms. Parris further contends that in order to seek a court's approval or disapproval of the termination or modification of a trust, the parties must bring all qualified beneficiaries of the trust before the court. Here, all qualified beneficiaries were, in fact, brought before the court. Although the initial complaint was brought by Ms. Miller and joined only the other siblings, Ms. Maples and Ms. Parris, upon Ms. Parris' assertion that Ms. Miller's children, the Hindmon brothers, were also qualified beneficiaries of the Trust, they were added as defendants to the action. The record shows that the Hindmons were properly served with the third amended complaint, which they answered.

Although the Hindmons were joined in the lawsuit, Ms. Parris now contends that their interests were not adequately protected by the enforcement of the Settlement. As set out in full context above, Tennessee Code Annotated section 35-15-411(d) allows the trust to be modified or terminated, even if all qualified beneficiaries do not consent, so long as certain enumerated criteria are met. As is relevant to this argument, one of those criteria is that "[t]he interests of a qualified beneficiary who does not consent will be adequately protected." In its order granting summary judgment, the trial court specifically found

> [t]hat the interests of Ms. Miller's issue, Marcus Hindmon and Matthew Hindmon, were and will be adequately protected with this Court's approval of modification or termination of the Trust. Article III, Section II(D) of the Trust requires that, upon Joy M. Parris' death, the Trust's assets be divided equally into three separate trusts, one for each of the three daughters. Marcus and Matthew Hindmon's interest in the Trust travels under their mother's, Mary Miller's, interest. The Settlement Agreement entitles Mary Miller to a distribution of her one-third interest in the Trust. For this reason, Marcus and Matthew Hindmon's interests are adequately protected.

We agree with the trial court's findings. Because the Hindmon brothers' interest in the Trust's assets vested through their mother, Mary Miller, so long as Ms. Miller's interest in the Trust was protected, the Hindmon brothers' interest was protected. Here, it is undisputed that the Settlement provided Ms. Miller with one-third of the Trust's assets. This is the percentage of the Trust's assets that the Trust grants to Ms. Miller.

Accordingly, Ms. Miller received her full interest in the Trust.

The trial court further noted that the Hindmon brothers "failed to provide this court with any evidence that their interests were not or will not be adequately protected." Indeed, the Hindmon brothers did not file any objection to the Estate's motion for summary judgment. Rather, the objection concerning the Hindmon brothers' interest was made by Ms. Miller and Ms. Parris as a proposed ground to set aside the Settlement. However, having been joined in the lawsuit, *supra*, any assertion concerning the protection of the Hindmon brothers' interest was theirs to make. They did not do so. Regardless, based on the foregoing discussion, it is clear that the Hindmon brothers' interest was protected when their mother received the full measure of her portion of the Trust's assets.

### V. Attorney's Fees

Having determined that the trial court did not err in approving the termination of the Trust under the TUTA and in granting summary judgment enforcing the Settlement, we now turn to the question of attorney's fees. In relevant part, the Settlement provides:

> 16. Default. Failure to satisfy and/or comply with any provisions of this Agreement will constitute a default of this Agreement. In the event of a default as described herein, and if a party places this Agreement in the hands of an attorney for enforcement, by suit or otherwise, the non-prevailing party shall pay all costs of collection or litigation, together with a reasonable attorney's fees.

In its order granting summary judgment, the trial court states, in relevant part:

> This Court's declaration that the Settlement Agreement is and shall be enforced disposes of all of the issues and controversies in this matter such that this is a Final Judgment. The Estate is directed to make, within thirty (30) days of the entry of this Judgment, an application to this Court for attorney's fees, if any, it believes it is entitled to under the terms of the Settlement Agreement.

In compliance with the trial court's order, on March 4, 2016, the Estate filed its application for attorney's fees. As grounds for the award of fees, the Estate argued that it was entitled to its fees under paragraph 16 of the Settlement, *supra*. In its application for fees, the Estate correctly noted that paragraph 16 of the Settlement contains two criteria, both of which must be met in order to award attorney's fees. First, there must be a default, which occurs with a party's "[f]ailure to satisfy and/or comply with any provisions of [the] Agreement." Second, the party must have engaged an attorney "for enforcement, by suit or otherwise . . . ." of the agreement. The Estate contends that Ms.

Parris and Ms. Miller defaulted under the Settlement by: (1) failing to "perform, execute and/or deliver, or cause to be performed, executed and/or delivered, any and all such further acts and assurances as necessary to effectuate, evidence and consummate . . . [the Settlement;" (2) not allowing the "terms of [the Settlement]" to "control the relationship of the Parties"; and (3) not acting consistently with the Settlement provision that "[t]ime is of the essence in the performance of [the Settlement]." In its reply brief, the Estate argues that Ms. Miller and Ms. Parris defaulted under the Settlement by "continually [seeking] to avoid application of the Settlement Agreement's terms and purposely resist[ing] the Estate's repeated efforts to have the Settlement Agreement enforced."

As noted above, the question of whether attorney's fees were warranted under the Settlement was heard by a special master. On November 18, 2016, the special master rendered an opinion that Ms. Miller and Ms. Parris defaulted under the Settlement by objecting to it. Specifically, the special master opined that "Ms. Miller and Ms. Parris have repeatedly fought against the agreement that they in fact approved and signed." Meanwhile, the special master noted that "the Estate has continuously pursued the enforcement of the Settlement . . . thereby satisfying the second component of the default provision [i.e., paragraph 16 of the Settlement]." By order of December 19, 2016, the trial court adopted the special master's report concluding that the Estate was entitled to its attorney's fees and costs under paragraph 16 of the Settlement. The trial court noted that the Settlement "specifically states '[t]ime is of the essence in the performance of this Agreement,'" and in light of the record before the Court and considering the extended nature of the litigation in this case, the Court finds that a default has occurred." The trial court's order cites **Marcum v. Ayers**, 398 S.W.3d 624,629 (Tenn. Ct. App. 2012) (citation omitted) for the well-settled rule that "[i]t is not the role of the courts to rewrite contracts for dissatisfied parties . . .in the absence of mistake or fraud, the courts will not create or rewrite the contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them." Respectfully, the Settlement at issue in this case is not an ordinary contract. Rather, this Settlement, by its own language, seeks "an early distribution of the trust corpus . . . and . . . termination of [the Trust]." Because the Settlement seeks termination of Mother's Trust, the parties were required to comply with the mandates of the TUTA, *see* discussion *supra*. In granting summary judgment to enforce the Settlement, the trial court, as stated in its order, relied on Tennessee Code Annotated section 35-15-411, which provides, in relevant part, that "[f]ollowing the settlor's death, a noncharitable irrevocable trust may be terminated upon consent of all qualified beneficiaries **if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust**" (emphasis added). Here, the Settlement, which sought termination of the Trust, triggered application of section 35-15-411(d), which states that "the . . . termination [of a trust] **may be approved by the court** if the court is satisfied [of certain criteria discussed in detail above]." Under the TUTA, the Settlement was not enforceable until such time as it was approved by the trial court. The approval of the trial court was not attained until the trial court entered its order on the motion for summary judgment, in which it found that the Settlement was enforceable

under the criteria set out in the TUTA, *see* discussion *supra.* While we acknowledge that the parties could have moved for approval of the Settlement earlier, the failure to do so is not clearly the fault of the Appellant. The Settlement was executed by the sisters on December 6, 2012; Ms. Maples did not die until October 16, 2013. There is no explanation in the record as to why the Settlement was not brought for approval by the trial court in the nearly one-year interim between its execution and Ms. Maples' death. Although, as noted by the trial court, the parties agreed that time was of the essence in the performance of their Settlement, none of the parties (including Ms. Maples) brought the Settlement for approval. Regardless, under the TUTA, and for the reasons discussed above, the Settlement was unenforceable until such time as it was approved by the trial court. At the earliest, that date would have been February 8, 2016, when the trial court entered its order enforcing the Settlement. Having appealed that decision, however, the Settlement is not enforceable until such time as the appellate process is concluded. Accordingly, we hold that the trial court erred in awarding attorney's fees under the Settlement for fees accrued prior to its ruling that the Settlement was, in fact, enforceable under the TUTA. The award of attorney's fees and costs to the Estate is, therefore, reversed.

For the foregoing reasons, we also decline Appellees' request for attorney's fees and costs on appeal.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order enforcing the Settlement. We reverse the trial court's order granting attorney's fees and costs to the Estate. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Jamie K. Parris and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE