IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2019 Session

## 101 CONSTRUCTION COMPANY v. LAWRENCE B. HAMMET, II ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-1268-III      Louis W. Oliver, III, Chancellor**

———————————————————

**No. M2018-01321-COA-R3-CV**

———————————————————

Plaintiff client sued Defendant attorney and law firm for damages tied to a breach of an attorney's fees contract following the completion of an arbitration matter. Following a jury trial, the jury returned a verdict in favor of defendants. Plaintiff appeals the denial of its motion for directed verdict and motion for new trial. Because the trial court erred in denying plaintiff's motion for directed verdict on interpretation of the written contract at issue, we reverse the verdict entered by the trial court and remand with instructions to enter a directed verdict against the attorney and law firm in the amount of $67,335.69 and to determine whether prejudgment interest is warranted in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed And Remanded with Instructions**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

David G. Thompson, Blind Akrawi, Erik C. Lybeck, Nashville, Tennessee, for the appellant, 101 Construction Company.

Richard M. Smith, Nashville, Tennessee, for the appellees, Lawrence B. Hammet, II, and Todd & Floyd, PLC.

## OPINION

### BACKGROUND

In 2002, Plaintiff/Appellee Lawrence B. Hammet, II ("Mr. Hammet") began his legal representation of Appellant 101 Construction Company ("101 Construction") while Mr. Hammet worked in a Nashville law firm. In 2003, Mr. Hammet continued

representing 101 Construction when he moved his practice to another law office, which subsequently became Defendant/Appellant Todd & Floyd, PLC ("the Firm" and together with Mr. Hammet, "Defendants").[1] Mr. Hammet represented 101 Construction continuously until 2010, when 101 Construction's CEO, Saeed Sassan ("Mr. Sassan"), asked Mr. Hammet to withdraw as counsel as the company suffered from financial difficulties. At the time, Mr. Hammet's representation included two arbitration matters where 101 Construction had not been compensated for its work.

Weeks after Mr. Hammet withdrew as counsel for the two arbitration matters, Mr. Hammet contacted Mr. Sassan to discuss whether 101 Construction had retained new counsel and how the 101 Construction file should be transferred. Mr. Hammet later called Mr. Sassan with an alternative fee proposal that would allow Mr. Hammet to resume representing 101 Construction at a lower hourly rate than before. Under the proposal, the Firm would receive $100.00 per billable hour for its work, and an "Additional Fee" would be assessed by the Firm based on its success in the two outstanding arbitration matters. Mr. Sassan orally agreed to the terms of the fee agreement in a conversation with Mr. Hammet. In letters dated December 1, 2010, and December 10, 2010,[2] the fee structure drafted by Mr. Hammet was as follows:

> At the conclusion of the matter and the receipt of the final decision and award of the arbitrator, our firm will be entitled to an additional fee payment ("Additional Fee"), in addition to the fees earned under the existing fee agreement, as well as those earned under the new fee arrangement based upon the Reduced Rate of $100 per hour. Notwithstanding the above, the Additional Fee is contingent upon the amount of monetary damages your company is awarded by the Arbitrator in its final decision ("Awarded Damages").

> The Additional Fee will be calculated at an hourly rate of $150 per hour ("Bonus Rate") that will be applied to the hours billed on this matter from the date of this agreement; but only to the degree of success realized as a result of the arbitration. The Additional Fee, based upon the Bonus Rate, shall be calculated on a percentage basis determined by the percent of the Awarded Damages as compared to the amount of monetary damages 101 Construction requests to be awarded at the close of the arbitration hearing ("Requested Damages").

---

[1] At the time of the events in this case, the Firm was named Todd, Floyd & Hammet, PLC. Mr. Hammet left the Firm before the filing of the complaint in the present case. Voluntarily, Mr. Hammet assumed joint and several liability in this matter and remains a named party in the present case.

[2] The two separate letters related to the two pending arbitration matters, referred to by the parties as the "Emerald Group matter" and the "H&P Smyrna matter." The December 1, 2010 letter concerned the Emerald Group matter, and the December 10, 2010 letter concerned the H&P Smyrna matter.

By way of example, should the Awarded Damages equal 100% of the Requested Damages, our firm will then be paid the Additional Fee determined by applying $150 per hour Bonus Rate to the hours charged by our firm to their matter from the date of this new agreement. Another example would be, should the Awarded Damages equal 50% of the amount of the Requested Damages, our firm then will be paid the Additional Fee by applying 50% of the $150 per hour Bonus Rate to the hours charged by our firm to this matter from the date of this agreement. Obviously, the baseline amount for determining the percentage of Awarded Damages as compared to Requested Damages for the purposes of calculating the Additional Fee will not be known until the amount of the Requested Damages is actually submitted to the arbitrator at the close of the arbitration hearing.

Upon receipt, Mr. Sassan agreed to the terms of the two letters as CEO of 101 Construction by signing the back page of each agreement.

The Firm's representation of 101 Construction continued as the H&P Smyrna arbitration was completed in May 2012. The arbitrator awarded the majority of 101 Construction's claim and less than half of H&P Smyrna's counterclaim. Mr. Hammet calculated the Firm's Additional Fee by separating the claim and the counterclaim into two fractions, and then placing the awarded damages for each claim as numerators and the requested damages for each claim as denominators. No prejudgment interest was included in the calculations. 101 Construction disputed Mr. Hammet's calculations in October 2012, but both parties negotiated and eventually compromised on a success rate that determined the Firm's Additional Fee. The final fee determination fell generally in line with the Firm's proposed calculation. Mr. Sassan later testified that he agreed to the compromise so 101 Construction could receive proceeds from the arbitration as quickly as possible.

Months after the H&P Smyrna fee settlement, the arbitration hearing for the Emerald Group matter occurred in January 2013. When the hearing concluded, 101 Construction sought $769,382.18 in damages in its claim and $319,339.39 in prejudgment interest. In a counterclaim, Emerald Group sought $253,136.79 in damages. After evaluating and calculating the claims and counterclaims, the arbitrator granted an award of $428,934.45 to 101 Construction.[3] No prejudgment interest was awarded. The Firm billed 1,434.20 hours while working on the Emerald Group matter. In calculating the Additional Fee, Mr. Hammet took the $602,886.78 awarded to 101 Construction in its original claim and divided that figure from the amount 101 Construction sought in the

---

[3] The arbitrator awarded $602,886.78 based on 101 Construction's claims, and reduced the award by $103,941.33 based on the counterclaims against 101 Construction. When the amount paid to 101 Construction to date was subtracted from the contract amount and net contract claims determined by the arbitrator, the difference was $428,934.45.

original claim, without considering the prejudgment interest sought.[4] Mr. Hammet calculated a 72% Success Rate, which he applied to the estimated hours that the Firm worked on 101 Construction's original claim. Mr. Hammet then took the $103,941.33 charged against 101 Construction in the counterclaim and divided it by the $251,136.79 in alleged counterclaim damages. That calculation resulted in a 41% Success Rate for Emerald Group, which led Mr. Hammet to apply a 59% Success Rate to the estimated hours the Firm spent litigating the counterclaim. In all, the Firm sought an Additional Fee of $152,096.91 from 101 Construction.[5] Mr. Hammet explained his calculations in an email to Mr. Sassan, who did not agree with Mr. Hammet's findings. The Firm and 101 Construction agreed for the Firm to disburse the undisputed funds from the arbitration to 101 Construction while the matter was resolved. The Firm transferred what it believed to be its fee out of its trust account after the non-disputed funds were dispersed.

101 Construction filed a complaint against Defendants on October 20, 2015 in Davidson County Chancery Court. 101 Construction sought $68,669.50 in damages and alleged that the Firm and Mr. Hammet separately breached the contract at issue by failing to correctly calculate the Additional Fee under the contract. Instead of the Firm's two-pronged calculation, the plaintiff claimed that the Awarded Damages calculation should have included prejudgment interest and did not allow for separate consideration of counter-claim awards. In an exhibit filed with the complaint, 101 Construction contended that the Additional Fee should have been calculated by dividing the net award to 101 Construction ($428,934.45) by the total amount, including prejudgment interest, it demanded during the arbitration proceeding ($1,106,041.00).[6] With a 38.8% Success Rate, the Additional Fee would be calculated at $83,427.41.[7] Mr. Hammet filed a motion to dismiss while arguing that the gravamen of the complaint was not a breach of contract matter, but was instead a claim of legal malpractice which was filed beyond the statute of limitations. The Firm adopted Mr. Hammet's argument in a separate motion to dismiss.

On January 29, 2016, Davidson County Chancellor Ellen Hobbs Lyle filed an order recusing herself from the case based on the Defendants' routine practice in her court. The case was later transferred to Sumner County Chancellor Louis W. Oliver, III on February 8, 2016.

---

[4] The defendants concede that Mr. Hammet erroneously calculated the Success Rate in the Emerald Green matter. While 101 Construction sought $769,382.18 in its original claim, Mr. Hammet first calculated $839,393.17 as the amount that 101 Construction demanded. The miscalculation led to a smaller Success Rate than what would have occurred if Mr. Hammet used the correct figures from the arbitration award.

[5] A version of this calculation as shown in 101 Construction's appellate brief is provided, *infra.*

[6] A version of this calculation as shown in 101 Construction's appellate brief is provided, *infra.*

[7] At trial and on appeal, 101 Construction alleged that the amount it sought during arbitration was $1,088,721.57. This would result in a Success Rate of 39.4% and an Additional Fee of $84,761.22. With these calculations, the damages sought by 101 Construction equal $67,335.69.

The trial court entered an order denying the Defendants' motions to dismiss on May 5, 2016, finding that the gravamen of 101 Construction's claim was breach of contract. Mr. Hammet subsequently filed an answer denying liability, raising several affirmative defenses, and alleging a counterclaim that 101 Construction breached the contract at issue. The Firm also denied liability and raised several affirmative defenses in a separate answer. In an amended complaint, 101 Construction renewed its allegations and included a new demand for a jury trial. In answering the counterclaim, 101 Construction denied Mr. Hammet's allegations and called for the counterclaim to be dismissed with prejudice.

101 Construction later filed a motion seeking summary judgment for its claim and Mr. Hammet's counterclaim, arguing that the case amounted to a question of law regarding the interpretation of the contract at issue. In response, Defendants claimed that they were entitled to summary judgment based on the undisputed facts of the case. The trial court partially granted and partially denied 101 Construction's motion for summary judgment in an order filed on March 6, 2018. The court dismissed Mr. Hammet's counterclaim but denied summary judgment on 101 Construction's breach of contract claim on the basis that there were disputed issues of material fact.

A jury trial occurred on March 14, 2018. 101 Construction's proof largely consisted of the testimony of Mr. Sassan. In contrast, Defendants generally relied on the testimony of Mr. Hammet. After the presentation of the proof, 101 Construction orally moved for a directed verdict, arguing that there was no question of fact for the jury to decide and the breach of contract issue should be decided as a matter of law. The trial court denied 101 Construction's motion and instructed the jury to decide whether: 1) the defendants breached their Fee Agreement with the plaintiff, and 2) if so, what amount of money should be paid by the defendants to the plaintiff under the Fee Agreement. During deliberations, the jury asked several questions and twice indicated that it could not come to a unanimous verdict.[8] Eventually, however, the jury returned a unanimous verdict that the Firm and Mr. Hammet did not breach its Fee Agreement with 101 Construction.

On May 4, 2018, 101 Construction renewed its motion for a directed verdict and separately moved for a new trial based on issues regarding evidence and various jury instructions. The renewed motion for a directed verdict also included a claim for prejudgment interest related to 101 Construction's alleged damages. After Defendants opposed the motions, the trial court entered an order on June 19, 2018 that denied the renewed motion for a directed verdict and the motion for a new trial. This timely appeal by 101 Construction followed.

---

[8] After two statements indicating that the jury was struggling to reach a unanimous verdict, the jury asked whether it could change the amount of money paid to 101 Construction if they unanimously found there was no breach of contract. The trial court later advised the jury that the scenario it proposed was not possible and instructed the jury to return the next day. Upon their return, the jury asked for a "better understanding of the word 'material' as it relates to material breach."

### ISSUES PRESENTED

Both parties presented similar issues on appeal. As we perceive them, the issues in the present case are as follows:

 1. Whether the trial court erred in denying Plaintiff's Motion for a Directed Verdict.
 2. Whether the trial court erred in denying Plaintiff's Motion for a New Trial.

### DISCUSSION

### I. Directed Verdict

The main question in this appeal is rooted in the trial court's denial of 101 Construction's motion for directed verdict based on the interpretation of the Fee Agreement between 101 Construction and Mr. Hammet. Tennessee Rule of Civil Procedure 50.01 governs motions for a directed verdict and states:

> A motion for a directed verdict may be made at the close of the evidence offered by an opposing party or at the close of the case. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

Tenn. R. Civ. Pro. 50.01. When considering a trial court's ruling on a motion for a directed verdict, we review the ruling *de novo* and apply the same standards used by the trial court. ***Brown v. Crown Entertainment Corp.***, 181 S.W.3d 268, 281 (Tenn. 2005) (citing ***Gaston v. Tenn. Farmers Mut. Ins. Co.***, 120 S.W.3d 815, 819 (Tenn. 2003)). "A directed verdict is appropriate only when evidence, viewed reasonably, supports only one conclusion." ***Twenty Holdings, LLC v. Land South TN, LLC***, No. M2018-01903-COA-R3-CV, 2019 WL 4200970 at *6 (Tenn. Ct. App. Sept. 5, 2019) (citing ***Remco Equipment Sales, Inc. v. Manz***, 952 S.W.2d 437, 439 (Tenn. Ct. App. 1997)). In reviewing a motion for a directed verdict, courts must take the strongest legitimate view of the evidence against the directed verdict. ***Id.*** (citations omitted). Further, appellate courts cannot weigh the evidence or evaluate the credibility of witnesses. ***Johnson v. Tenn. Farmers Mut. Ins. Co.***, 205 S.W.3d 364, 370 (Tenn. 2006). A motion for a directed verdict must be denied if material evidence is disputed or "doubt exists as to the

conclusions to be drawn from that evidence." *Id.* (citing *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995)). "A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's." *In re Estate of Marks*, 187 S.W.3d 21, 27 (Tenn. Ct. App. 2005).

Generally, the interpretation of written contracts is a matter of law that we review *de novo* on the record with no presumption of correctness. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). When resolving issues of contract interpretation, this Court "is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Id.* While courts must determine the intent of the parties from the express terms of the contact, "as an aid to finding that intention, the court may consider the situation of the parties, the business to which the contract relates, the subject matter of the contract, the circumstances surrounding the transaction, and the construction placed on the contract by the parties in carrying out its terms." *Silva v. Buckley*, No. M2002-00045-COA-R3-CV, 2003 WL 23099681 at \*2 (Tenn. Ct. App. Dec. 31, 2003) (citing *Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000)). Determining the intent of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for the jury to decide." *Planters Gin Co. v. Fed. Compress & Warehouse, Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). However, other established rules of construction must be applied to determine the parties' intent from a contract when its terms are ambiguous or "susceptible to more than one reasonable interpretation." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). As the Tennessee Supreme Court has explained,

> A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous. Once found to be ambiguous, a court applies established rules of construction to determine the parties' intent. "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury. *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235, 1239 (5th Cir.1981).

*Planters Gin Co.*, 78 S.W.3d at 890.

In the present case, 101 Construction seeks a directed verdict on its breach of contract claim. To prevail on a breach of contract claim, a party must prove that a valid and enforceable contract exists, a breach of that contract occurred through a deficiency in performance, and damages were caused by the breach. *Fed. Ins. Co. v. Winters*, 354

S.W.3d 287, 291 (Tenn. 2011). The only element of the claim disputed by the parties is whether the breach occurred under the terms of the Fee Agreement, i.e., whether Defendants breached the contract by retaining more compensation than provided by the Fee Agreement. In this appeal, 101 Construction argues that the contract at issue did not contain an ambiguity so as to create a jury question on the interpretation of the contract. Even if an ambiguity exists, 101 Construction further argues that rules of construction, particularly *contra proferentem*[9], would lead to a court finding in its favor as a matter of law. Defendants, however, contend that the trial court correctly found an ambiguity that led to a mixed question of law and fact. The ambiguity exists, they argue, when considered in the context of the material facts used by the parties in understanding the contract and the standard arbitration proceedings that include separate awards for claims and counterclaims.

Thus, the first question this court must answer is whether an ambiguity exists in the language of the contract, which left unresolved by the rules of construction, may be submitted to the jury. *See **Planters Gin***, 78 S.W.3d at 890 (stating that the court's "initial task" is to determine whether the language in a contract is ambiguous). A contract is ambiguous "only when it is of uncertain meaning and may fairly be understood in more ways than one." ***Id.*** (citing ***Empress Health & Beauty Spa, Inc. v. Turner***, 503 S.W.2d 188, 190–91 (Tenn. 1973)). "A strained construction may not be placed on the language used to find ambiguity where none exists." ***Turner***, 503 S.W.2d at 190–91.

## A. Calculation of Additional Fee

We begin first with the parties' disagreement as to the proper method of calculating the Additional Fee under the Fee Agreement. In order to determine whether an ambiguity exists as to this dispute so as to support the trial court's decision to deny the motion for directed verdict, it is necessary to consider the competing interpretations submitted the parties. *See **Allstate Ins.***, 195 S.W.3d at 611 (stating that a contract is ambiguous when it is subject to more than one reasonable interpretation). On the one hand, 101 Construction contends that the language of the Fee Agreement provides for a single calculation in which the total amount of the damages awarded is divided by the total amount requested. Under this calculation, the success or failure as to any counterclaims is considered part and parcel of the entire fee claim, as any recovery on the counterclaims reduces the overall amount of damages awarded. As provided in its appellate brief, the Plaintiff's calculation is as follows:

---

[9] *Contra proferentum*, or Latin for "against the offeror," is a contract interpretation doctrine that construes ambiguities against the drafter of the document. *Black's Law Dictionary* 376 (9th ed. 2009).

- 8 -

$$\text{Additional Fee} = \frac{\text{Awarded Damages}}{\text{Requested Damages}} \times \$150 \times \text{Hours Billed Under New Agreement}$$

In contrast, Defendants contend that the calculation must be performed twice, once with regard to the affirmative claims raised by 101 Construction and separately with regard to any counter claims that were raised against 101 Construction in the arbitration. As presented in 101 Construction's brief,[10] Defendants' calculation is as follows:



To resolve this dispute, we begin with the language of the Fee Agreement:

The Additional Fee will be calculated at an hourly rate of $150 per hour ("Bonus Rate") that will be applied to the hours billed on this matter from the date of this agreement; but only to the degree of success realized as a result of the arbitration. The Additional Fee, based upon the Bonus Rate, shall be calculated on a percentage basis determined by the percent of the Awarded Damages as compared to the amount of monetary damages 101 Construction requests to be awarded at the close of the arbitration hearing ("Requested Damages").

Accordingly, the calculation of the Additional Fee required dividing the amount of damages awarded to 101 Construction by the amount 101 Construction requested at the end of the arbitration matter. Then, the result would be multiplied by the number of hours worked and the $150 hourly rate to determine the actual fee.

---

[10] Nothing in Defendants' appellate brief suggests that 101 Construction's equation is an inaccurate statement of their position.

In our view, 101 Construction's interpretation of the contract is the only reasonable interpretation under the circumstances. As noted above, the language of the contract provides that the Firm is entitled to an additional fee to be determined by comparing the "Awarded Damages" to the "Requested Damages." Both of these terms are defined by the Fee Agreement. Requested Damages refers to those damages "request[ed] to be awarded at the close of the arbitration hearing," while Awarded Damages refers to "the amount of monetary damages [101 Construction] is awarded by the Arbitrator in its final decision." Neither of these definitions makes a distinction based upon whether money was awarded or lost due to the success or failure of a counterclaim. Instead, the language of the Fee Agreement more closely matches how the Emerald Group arbitrator handled the overall award by reducing the overall damages awarded to 101 Construction by the amount of damages from successful counterclaims against the company.

Moreover, no language in the Fee Agreement accounts for the separate claims that the defendants believe require separate calculations. Importantly, there is no mention in the Fee Agreement of any counterclaim or otherwise any express indication that counterclaims should be calculated separately from the damages awarded on affirmative claims. As such, the specific words used to describe the calculation lend no support to the theory that counterclaims should be calculated in a distinct manner. *Cf.* ***Adler v. Double Eagle Properties Holdings, LLC***, No. W2014-01080-COA-R3-CV, 2015 WL 1543260, at *10 (Tenn. Ct. App. Apr. 2, 2015) (holding that a contract was not an easement where the term "easement" was never mentioned in the contract).

Further, Defendants' calculations run counter to the examples Mr. Hammet provided in the Fee Agreement to explain the application of the Additional Fee. As stated in the agreement, if 101 Construction received 100% of its requested damages, the Firm would receive all of its $150 an hour Bonus Fee rate. If 101 Construction received 50% of its requested damages, the Firm would receive half of its $150 an hour Bonus Fee rate. Again, this example shows a single calculation based on money requested and awarded with nary a mention of counterclaims. To inject a second prong into the calculation to create a distinction between amounts recovered for claims and counterclaims therefore directly conflicts with the example provided demonstrating a single calculation taking into account only amounts requested and recovered.

Defendants argue, however, that this interpretation ignores the context of the Fee Agreement relative to the pending arbitration. Although context is a relevant consideration in interpreting a contract, see ***Silva***, 2003 WL 23099681 at *2, we are not persuaded that this consideration undermines our conclusion. As noted, at the time that the parties entered into the contract, the Firm was engaged in representation of 101 Construction in two pending arbitrations. Thus, the Firm was well aware of the context of the representation at the time the contract was drafted and the manner in which claims

and counterclaims are treated in the arbitration context. Despite this knowledge, the Firm chose to illustrate the calculation necessary for determining the Additional Fee without reference to a distinction or separation between damages related to claims and counterclaims. Moreover, the arbitration award at issue in this case supports 101 Construction's interpretation of the contract, as the arbitrator came to a single award by simply subtracting the amounts owed on the successful counterclaims from the amounts awarded on the successful claims.

"'A contract term is not ambiguous merely because the parties to the contract may interpret the term in different ways.'" *Adler*, 2015 WL 1543260, at *8 (quoting *Staubach Retail Services-Southeast, LLC v. H.G. Hill*, 160 S.W.3d 521, 526 (Tenn. 2005)). In this case, Defendants' interpretation of the contract is simply not supported by the language it chose to use in drafting the Fee Agreement. Rather, the plain language of the Fee Agreement, particularly the express example provided therein, provides for a single calculation of the Additional Fee taking into account only two figures: the damages requested at the final arbitration hearing and the damage awarded at the conclusion of the arbitration. In the absence of an ambiguity, we apply the plain language of the contract as written without resort to extrinsic evidence.[11] *Adkins v. Bluegrass Estates, Inc.*, 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011) (quoting *Shuttleworth, Williams, Harper, Waring & Derrick, PLLC v. Smith*, No. W2007-02295-COA-R3-CV, 2010 WL 744375, at *2–3 (Tenn. Ct. App. March 5, 2010)). ("If the contract is unambiguous, then the court should not go beyond its four corners to ascertain the parties' intention.").

As previously discussed, a directed verdict is appropriate "with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's." *In re Estate of Marks*, 187 S.W.3d at 27. Interpretation of an unambiguous contract is an issue of law. *Guiliano*, 995 S.W.2d at 95. Consequently, the trial court erred in denying 101 Construction's directed verdict as to the meaning of the Fee Agreement. Consequently, we reverse the decision of the trial court and hold, as a matter of law, that the Fee Agreement is entitled to only a single reasonable interpretation and requires a single calculation as to the amount of the Additional Fee owed.

## B. Prejudgment Interest

In addition to their dispute as to the overall calculation of the Additional Fee, the parties also dispute whether the contract unambiguously provides that prejudgment interest should be considered in the calculation. For its part, 101 Construction contends that no ambiguity exists in the contract and prejudgment interest should be included among the damages requested and awarded for purposes of calculating the Additional

---

[11] We therefore pretermit any consideration of 101 Construction's prior acceptance of the calculation submitted by the Firm in the H&P Smyrna matter with regard to the interpretation of the Fee Agreement.

Fee. Defendants contend that the contract is ambiguous and that this issue was properly decided by the jury, which appears to have rejected consideration of prejudgment interest in the calculation.

In the present case, 101 Construction contends that the Additional Fee should account for the prejudgment interest it sought, but was not awarded, in the Emerald Group arbitration matter.[12] 101 Construction cites Tennessee Code Annotated section 47-14-123, which considers prejudgment interest "as an element of, or in the nature of, damages[.]" By that token, 101 Construction argues that no ambiguity exists regarding the inclusion of prejudgment interest as "Requested Damages" under the calculation of the Additional Fee. Defendants argue, however, that that prejudgment interest should not be included in the calculation, as prejudgment interest is an equitable measure of relief that should be considered only within the scope of the arbitration matter at issue. In their calculation of the H&P Smyrna matter, prejudgment interest was not included in the damages sought by 101 Construction.

After our review, we do not discern an ambiguity in the Fee Agreement as to whether prejudgment interest should be included in the calculation of the Additional Fee. As previously discussed, the calculation of the Additional Fee requires a comparison of "Requested Damages" to "Awarded Damages." Requested Damages refers to "the amount of monetary damages" requested, whereas Awarded Damages means "the amount of monetary damages" awarded. Thus, these figures must both be determined by reference to the "monetary damages" requested and awarded.

Based on our research, we must conclude that the term "monetary damages" includes prejudgment interest. In Tennessee, prejudgment interest is considered "interest as an element of, or in the nature of, damages[.]" Tenn. Code Ann. § 47-17-123. A trial court can award prejudgment interest in its discretion "in accordance with the principles of equity[.]" *Id.* When a party is entitled to compensatory damages, a plaintiff can also be entitled to prejudgment interest "as part of the compensatory damages." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 928 (Tenn. 1998). The ruling in *Myint* called on courts in Tennessee "to articulate a different, more flexible standard for considering prejudgment

_____

[12] The prejudgment interest issue in the present case has been dogged by procedural confusion. In motions for summary judgment and directed verdicts, 101 Construction contended that, as a matter of law, prejudgment interest should be calculated as part of the "the amount of material damages" requested by 101 Construction at the end of the arbitration hearing. The trial court denied each motion, holding that 101 Construction and the defendants had materially different understandings of the terms of the agreement. Before and after these rulings, however, the trial court presented jury instructions that advised the jury that "[a]s a matter of law, I'm instructing you that prejudgment interest is a type of monetary damages." No objection was made to the instruction as it was given, and no party addressed it further during jury deliberations, after the verdict, in a subsequent motion for directed verdict, or during this appeal. Because we resolve this issue as a matter of law, the procedural irregularities are confusing but not material.

interest claims." ***Scholz v. S.B. International, Inc.***, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000).

> As we construe the ***Myint*** decision, the Tennessee Supreme Court has shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds. Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received.

***Id.*** (citations omitted). Following that ruling, this Court has held that an insurance policy that extended to "all damages" accrued by a policyholder unambiguously included prejudgment interest as part of the damages covered by the contract. ***Malone v. Maddox***, No. E2002-01403-COA-R3-CV, 2003 WL 465668 at \*5 (Tenn. Ct. App. Feb. 25, 2003). This Court disagreed with the assertion that "the concept of 'damages' alluded to in the [insurance] coverage does not include prejudgment interest." ***Id.*** In other states, courts have long held that contracts that include damages are not ambiguous when concerning whether prejudgment interest applies as damages. *See, e.g.,* ***Guin v. Ha***, 591 P.2d 1281, 1286 (Alaska 1979) ("The issue, therefore, is whether prejudgment interest is an item of "damages" within the damage liability clause. We believe that our prior decisions establish . . . that prejudgment interest is an item of compensatory damages."); ***Mayer v. Medical Malpractice Joint Underwriting Ass'n***, 663 N.E.2d 274, 276–77 (Mass. App. Ct. 1996) (holding that no ambiguity regarding prejudgment interest existed when a contract compensated for damages); ***Baxley v. Nationwide Mut. Ins. Co.***, 430 S.E.2d 895, 899 (N.C. 1993) (holding that courts should not limit the definition of a word if an insurance contract does not limit the term); ***Austin v. Midgett***, 583 S.E.2d 405, 407−408 (N.C. App. 2003) (holding that prejudgment interest should be included as damages in a contract which does not expressly exclude them as such). Thus, authority in Tennessee and outside this jurisdiction has generally indicated that the term "damages" includes prejudgment interest.

Defendants' argument that the "monetary damages" in the Fee Agreement deal only with "direct damages" arising out of a breach of contract is also not compelling. According to Defendants, direct damages does not include prejudgment interest, but rather includes only damages that "arise naturally or ordinary from a breach of contract." ***Moore Const. Co. v. Clarksville Dep't of Elec.***, 707 S.W.2d 1, 14 (Tenn. Ct. App. 1985) (quoting ***Roanoke Hospital Association v. Doyle & Russell, Inc.***, 215 Va. 796, 214 S.E.2d 155, 160 (1975)). Respectfully, Defendants' argument is not persuasive. The contract does not require a calculation based on "direct damages," nor is that term used in any pleading filed in the trial court. Rather, the Firm, in its wisdom, chose to use the term "monetary damages" in this contract. Thus, even if we were to assume that the term

"direct damages" does not include prejudgment interest,[13] such an assumption would have no relevance to the question presented in this case regarding the proper interpretation of the term "monetary damages." Moreover, while prejudgment interest is awarded based on equitable considerations, it has continually been classified as a form of damages regardless of the nature of relief it provides. As stated by this Court, "[d]amages means damages. It can not *fairly* be understood here to be 'something else.'" **Marcum v. Ayers**, 398 S.W.3d 624, 628 (Tenn. Ct. App. 2012).

The addition of the word "monetary" does not change our conclusion. The use of the term monetary damages, like money damages, is considered a common redundancy for the word damages. *Garner's Dictionary of Legal Usage* 586 (3d ed. 2011). Moreover, there can be no dispute that prejudgment interest is monetary in nature. Consequently, if the term "damages" generally contemplates an award of prejudgment interest, the term "monetary damages" maintains the same connotation.

Further, the Defendants' argument that "[u]se of judicial precedence [sic] to defined terms in arbitration is not correct" is not well taken. Notwithstanding the Defendants' lack of citations to defend this claim, Tennessee courts have consistently examined judicial precedent in examining matters of arbitration. *See, e.g.,* **Berent v. CMH Homes, Inc.**, 466 S.W.3d 740 (Tenn. 2015) (holding that federal arbitration statutes did not preempt state law governing unconscionability of the arbitration agreement); **Pugh's Lawn Landscape Co., Inc. v. Jaycon Development Corp.**, 320 S.W.3d 252 (Tenn. 2010) (holding that ordinary, not special, appellate standards of review apply in arbitration matters); **Lasco Inc. v. Inman Construction Corp.**, 467 S.W.3d 467 (Tenn. Ct. App. 2015) (holding that Tennessee courts can uphold arbitration awards "in the faces of arguments that the arbitrator exceeded his power, the objections to the awards concerned the underlying correctness of the award, rather than whether such an award was authorized pursuant to the arbitration agreement."). We are not persuaded to ignore that precedent here.

In sum, Tennessee law recognizes prejudgment interest as a form of damages, which is generally synonymous with "monetary damages." The agreement does not further define the term, which allows this Court to interpret the term with its plain and ordinary meaning. *See* **Fisher v. Revell**, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (citing **Ballard v. North American Life & Casualty Co.**, 667 S.W.2d 79 (Tenn. Ct. App. 1983) (holding that contractual terms that express the parties' intent "should be given the usual, natural, and ordinary meaning.")). Based on our interpretation, 101 Construction requested prejudgment interest as part of its damages sought in the arbitration award. The compensation contract expressly calculated monetary damages requested in the

---

[13] The Firm and Mr. Hammet cite no law that expressly holds that "direct damages" excludes amounts awarded as prejudgment interest.

arbitration matter. Therefore, 101 Construction is entitled to a directed verdict concerning breach of contract and the subsequent calculations conducted by the Defendants.[14]

## II.  Motion for a New Trial

101 Construction also argues that the trial court erred in failing to grant a new trial based on issues involving evidence and jury instructions. When appellate courts are presented with multiple issues on appeal and find one to be dispositive, the remaining issues have consistently been found as pretermitted. *In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855 at *8 (Tenn. Ct. App. June 30, 2017) (citations omitted). Because the trial court erred in not granting a directed verdict regarding the defendants' breach of contract, any additional questions about whether the court should have granted a new trial are pretermitted.

## III.  Damages

Given 101 Construction's entitlement to a directed verdict on grounds of the calculation of the claims and counterclaims as well as the calculation of prejudgment interest, we turn now to the calculation of damages that 101 Construction is entitled from these directed verdicts. As stated in the Fee Agreement, the Additional Fee is determined by: 1) dividing the Awarded Damages from the Requested Damages to determine the Success Rate, 2) multiplying the Success Rate by $150 to determine the Bonus Rate, and 3) multiplying the Bonus Rate by the number of hours billed on the matter. By dividing the amount of recovery ($428,934.45) over the amount of requested damages, which includes prejudgment interest ($1,088,721.57), the Success Rate is 39.4%. When 39.4% is multiplied by $150 an hour, the Bonus Rate would equal $59.10 an hour. When $59.10 an hour is multiplied by the 1,434.20 hours billed on the Emerald Group matter, the resulting Additional Fee is $84,761.22. Because the Firm and Mr. Hammet retained $152,096.91 after the conclusion of the Emerald Green matter, the defendants overpaid themselves by $67,335.69.

101 Construction also seeks the award of prejudgment interest on the amount owed to it. From our review of the record on appeal, 101 Construction first requested prejudgment interest in its renewed motion for a directed verdict. The failure to specifically plead prejudgment interest in initial or amended pleadings, however, does not preclude a court from awarding prejudgment interest. *Story v. Lanier*, 166 S.W.3d 167, 180–81 (Tenn. Ct. App. 1995) (allowing prejudgment interest when it was first raised in a motion for new trial). Thus, we must conclude that this request was timely made.

---

[14] There is some argument in 101 Construction's brief as to the affirmative defense of waiver as raised by Defendants in the trial court. Defendants in their brief assert that waiver is not an issue. Because the Defendants concede they have not raised a waiver defense to 101 Construction's claim in this case, we see no reason to review this issue.

The purpose of awarding prejudgment interest is to fully compensate a plaintiff for losing access to funds which he or she was legally entitled. *Myint*, 970 S.W.2d at 927 (citation omitted). As a matter of equity, the certainty and ascertainable nature of the plaintiff's claims are used as non-dispositive factors when considering whether to award prejudgment interest. *Id.* at 928. As shown through *Myint*, awards of prejudgment interest are more likely to occur "whenever doing so will more fully compensate plaintiffs for the loss of use of their funds." *Scholz*, 40 S.W.3d at 83. However, prejudgment interest may be inappropriate when the party seeking that interest unreasonably delayed the pursuit of a claim or the legal proceedings after the claim was made. *Id.* at 83–84 (citations omitted).

Although the issue of prejudgment interest was raised both in the trial court and on appeal, we must note that little effort was made to argue this issue in either court. For example, the bulk of 101 Construction's application for an award of prejudgment interest is contained in a single footnote of its appellate brief. Perhaps unsurprisingly, Defendants also do not devote considerable argument to this issue.

An award of prejudgment interest generally involves three questions: (1) whether to award prejudgment interest; (2) the interest rate to be applied, not to exceed 10% per annum, and (3) the date upon which interest should accrue. Nothing in 101 Construction's appellate brief addresses the latter two questions. Moreover, because of the jury verdict, the trial court was never in a position to exercise its discretion to consider whether prejudgment interest was warranted and in what manner, based on the particular equities in this case. Because of the discretionary nature of prejudgment interest, however, we conclude that the trial court is in the best position to determine this issue. As such, we remand to the trial court for a determination of whether prejudgment interest should be awarded, and if so, the appropriate interest rate and accrual date.

## CONCLUSION

The judgment of the Davidson County Chancery Court is reversed. This cause is remanded to the trial court with orders to direct a verdict in favor of 101 Construction against the Firm and Mr. Hammet in the amount of $67,335.69 and determine whether prejudgment interest should be awarded, and if so, the proper interest rate and date of accrual. Costs of this appeal are taxed to the appellees, Lawrence B. Hammet, II, and Todd & Floyd, PLC, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE